| | |
|---|---|
| **CRAIG M. GORDON** | **CIVIL ACTION NO. 3:10-cv-1904** |
| **LA. DOC #138699** | |
| **VS.** | **SECTION P** |
| | **JUDGE ROBERT G. JAMES** |
| **WARDEN CHAD LEE** | **MAGISTRATE JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

*Pro se* plaintiff Craig M. Gordon, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on December 21, 2010. Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections; when he filed his complaint he was incarcerated at the Franklin Parish Detention Center (FPDC), Winnsboro, Louisiana. He was transferred to the Morehouse Parish Detention Center (MPDC), Collinston, Louisiana sometime between late February to March 20, 2011.

Plaintiff complained that he could not practice his chosen religion of Rastafarianism at FPDC, and, that FPDC has no prisoner grievance system. He sued Warden Chad Lee and asked for an order directing his transfer "... to the Department of Corrections where I can practice my religion."

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

*Background*

*1. Original Complaint [Doc. #1]*

In his original complaint, plaintiff implied that his right to practice his chosen religion was

curtailed by the defendant, Warden Chad Lee. More specifically he alleged, "... I come to you with a complaint only referring to my religion. Sir I've been here two years and as you could see I am practicing the religion of Rastafarian. Please understand that I have made written complaints but every time I asked for a A.R.P. form they refused me. That sir is my complaint and my only process that I come to you with." [Doc. #1, ¶IV]. He prayed only for injunctive relief, "I would like to be transferred to the Department of Corrections where I can practice my religion." [Id., ¶V] As noted above, plaintiff sued a single defendant, Warden Chad Lee.

### 2. Amend Order and Amended Complaint [Docs. #6 and #7]

Plaintiff's original complaint failed to state a claim for which relief might be granted. Accordingly, an amend order was prepared; plaintiff's practice of religion complaints were identified as arising under either the First Amendment or the RLUIPA and plaintiff was provided instruction with regard to his rights under the Constitution and the statute. Additionally, plaintiff's complaint concerning grievances and his request for transfer were also addressed and plaintiff was instructed on the law regarding both of those claims as well. Finally, plaintiff was instructed to amend his complaint to – "...describe in detail the Rastafarian religion he practices; ... describe in detail ceremonies or practices essential to his practice of Rastafarianism and state when and how often he engaged in these practices prior to his incarceration, and, .... [to] state how his present confinement prohibits him from engaging in those practices..." He was also instructed to "...state the number of practitioners of Rastafarian beliefs incarcerated in FPDC, or elsewhere in Louisiana prisons, and, he should specify which prisons in Louisiana accommodate the practice of Rastafarianism..." Finally, he was instructed to "... describe in detail the prejudice he suffered as a result of the actions/inactions of the defendant with regard to his practice of religion claims." [Doc. #6]

On March 21, 2011, plaintiff filed an amended complaint. He advised the Court of his recent

transfer to the Morehouse Parish Detention Center, and although he alleged, "... this place is the same but worst..." he did not amend his complaint to name any corrections staff at MPDC as defendants, and apparently maintained his original prayer for relief – that the defendant, FPDC Warden Chad Lee, transfer him to an LDOC facility that has a Rastafarian congregation. He also provided a multi-page hand-written description of the practice of the Rastafarian religion; however, he did not state when and how often he engaged in these practices prior to his incarceration, nor did he state how his present confinement prohibits him from engaging in those practices. Likewise he failed to provide the number of practitioners of Rastafarian beliefs incarcerated in FPDC, or elsewhere in Louisiana prisons, and, more importantly, he failed to describe in detail the prejudice he suffered as a result of the actions/inactions of the defendant with regard to his practice of religion claims. For example, he alleged that the religion "... requires the worship of JAH not only through participation in rituals and chanting ceremonies, but also through the daily action of life and thought a man and woman follows..." He did not allege that the rituals and ceremonies were strictly congregational practices nor did he maintain that such ceremonies and rituals could not be performed by a single practitioner. He also alleged that as a practitioner he must "... reject slavery, white supremacy, black inferiority [and] and worldly possessions..." but did not claim that such beliefs and practices were forbidden to him by virtue of his incarceration. He noted that some practitioners wear their hair in dread locks; however, he did not allege that he wanted to adopt that practice but was forbidden to do so, nor did he allege that such practice is allowed in any prison in Louisiana. Finally, he alleged that Rastafarians are vegetarians who consume only "natural foods... not contaminated or denatured by any processing..." and to whom meat, fish, poultry, and eggs are forbidden. However, he did not allege that he was prohibited from following these dietary laws, nor did he assert that he was a follower of this practice prior to his incarceration.

## Law and Analysis

### 1. Screening

When a prisoner is allowed to proceed *in forma pauperis* in a suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Courts are not only vested with the authority to dismiss a claim based on an indisputably

meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

Plaintiff's original complaint set forth his claims and the basis for his cause of action; he was instructed to amend his complaint to provide more specific factual support for his claims. He filed an amended complaint as instructed; however, he failed to address many of the issues he was instructed to address.

Under the circumstances, he need not be permitted further amendment because his allegations – taken as true for the purposes of this report – fail to state a claim for which relief may be granted.

## 2. Practice of Religion

### a. First Amendment

Inmates retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. Nevertheless, lawful incarceration, by its very nature, brings about the necessary withdrawal or limitation of many privileges and rights. The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987).

The standard for evaluating an inmate's claim that a prison regulation or practice improperly restricts his right to the free exercise of his religion requires the court to evaluate the regulation or practice in order to determine whether it "is reasonably related to legitimate penological interests." *Id.* at 349. The "reasonableness" of a regulation or practice is evaluated based upon the following inquiry: (1) Is there a valid, rational connection between the prison practice and the legitimate governmental interest put forward by prison officials to justify the practice; (2) Are there alternative

means of exercising the right that remain open to prison inmates, that is, are inmates allowed other means to express their religious beliefs on a general level; (3) What impact will accommodation of the asserted constitutional right have on guards and other inmates and on the allocation of prison resources generally; and, (4) Are alternatives to the prison practice available that would accommodate the inmates' rights at a *de minimis* cost to valid penological interests? *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), *Green v. Polunsky*, 229 F.3d 486, 489-90 (5th Cir.2000). Each factor need not be considered, and the factors need not be evaluated evenly. *Scott v. Mississippi Dep't of Corrections*, 961 F.2d 77, 80 (5th Cir.1992).

Plaintiff has not demonstrated in either his original complaint or his amended complaint that he is totally prohibited from practicing his chosen religion by the regulations or practices at either the FPDC or the MPDC. It appears that he is the sole and only Rastafarian imprisoned at either institution and therefore, the failure to provide congregational worship cannot be attributed to the corrections officials at either institution. Plaintiff has not shown that he is prohibited from maintaining his beliefs and performing the prescribed rituals on his own and therefore, he fails to state a claim under the First Amendment.

### b. RLUIPA

Liberally construed, and giving plaintiff the benefit of the doubt, it may be assumed that he also alleges a violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA) [see 42 U.S.C. §2000cc *et seq*.]. RLUIPA mandates that, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –

(1) is in furtherance of a compelling governmental interest; and

6

(2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc-1(a).

The Supreme Court has noted that RLUIPA protects the rights of prisoners who are unable to freely attend to their religious observances and who are dependant on the government's permission and accommodation. *Cutter v. Wilkinson*, 544 U.S. 709, 721, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005).

In order to state a claim under RLUIPA, the prisoner must show that challenged government action places a "substantial burden" on the exercise of his religion. If the prisoner carries the burden of proof on this issue, then the government must demonstrate some compelling interest warranting the challenged action. Under RLUIPA, a "religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id. §* 2000cc-5(7)(A). Thus, religious services, religious education, and dietary principles all qualify as "religious exercises."

While the statute does not define "substantial burden," Fifth Circuit jurisprudence has defined it as follows in the context of the RLUIPA, "... a government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins v. Kaspar*, 393 F.3d 559 (5th Cir. 2004) at 569-70.

As noted in the discussion above, plaintiff has not now or ever alleged that the defendants have done anything to pressure him to modify his religious behavior or violate his beliefs or the tenets of Rastafarianism. Plaintiff has likewise failed to state a claim for which relief may be granted under the RLUIPA.

## 2. Grievances

Plaintiff also implied that the FPDC grievance system is inadequate. In *Sandin v. Conner*,

515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court left prisoners without a federally-protected right to have grievances investigated and resolved. Any right of that nature is grounded in state law or regulation and the mere failure of an official to follow state law or regulation, without more, does not violate constitutional *minima*. *See Taylor v. Cockrell*, 2004 WL 287339 at \*1 (5th Cir. Feb.12, 2004) (not designated for publication) (holding that "claims that the defendants violated ... constitutional rights by failing to investigate ... grievances fall short of establishing a federal constitutional claim"); *Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005) (Prisoners do not have a federally protected liberty interest in having their grievances resolved to their satisfaction; any alleged due process violation arising from the alleged failure to investigate prisoner grievances is indisputably meritless); *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 138, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) (Burger, C.J., concurring) (applauding the institution of grievance procedures by prisons but not suggesting that such procedures are constitutionally required); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) ("[T]he constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (quotation omitted) (holding that a prison grievance procedure is not a substantive right and "does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991 *(per curiam)* (concluding regulations providing for administrative remedy procedure do not create liberty interests in access to that procedure); and *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988) ("There is no legitimate claim of entitlement to a grievance procedure.").

Plaintiff's complaint, insofar as it claims that he is entitled to a prison grievance system, fails

to state a claim for which relief may be granted.

### 3. Transfer

Plaintiff prays only to be transferred to another prison where he may practice his chosen religion. He is not entitled to that relief. Broad discretionary authority must be afforded to prison administrators because the administration of a prison is "at best an extraordinarily difficult undertaking." *Wolff v. McDonnell*, 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974) To hold  that any substantial deprivation imposed by prison authorities triggers the procedural protections of the Due Process Clause would subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts.  *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948).

Prisoners simply do not have a constitutionally derived liberty interest in being held in any particular institution. *See Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976); *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976);  *Adams v. Gunnell*, 729 F.2d 362, 368 (5th Cir. 1984);  *Oladipupo v. Austin,* 104 F.Supp.2d 643 (W.D.La. 2000).  Thus, to the extent that plaintiff seeks such relief, he fails to state a claim for which relief may be granted.

### *Recommendation*

Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaints be **DISMISSED WITH PREJUDICE** for failing to state a claim on which relief may be granted in accordance with the

provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, May 17, 2011.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE